

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| ANTONIO R. WOODS, § | |
| Petitioner/Defendant, § | |
| § | |
| vs. § | CRIMINAL ACTION NO.: 3:18-418-MGL-1 |
| § | CIVIL ACTION NO.: 3:20-3339-MGL |
| UNITED STATES OF AMERICA, § | |
| Respondent. § | |

**MEMORANDUM OPINION AND ORDER
DENYING WOODS'S SECTION 2255 MOTION TO VACATE,
GRANTING THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING WOODS'S MOTIONS TO REDUCE SENTENCE**

**I.     INTRODUCTION**

Pending before the Court are Antonio R. Woods's (Woods) motion to vacate his sentence under 28 U.S.C. § 2255 (motion to vacate), the government's motion for summary judgment, and Woods's three motions to reduce his sentence.

Having carefully considered the motions, the responses, the replies, the record, and the applicable law, it is the judgment of the Court Woods's motion to vacate will be denied, the government's motion for summary judgment will be granted, and Woods's motions to reduce sentence will be denied.

## II.    FACTUAL AND PROCEDURAL HISTORY

Woods pled guilty, pursuant to a plea agreement, to possession with intent to distribute a quantity of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

At sentencing, based on the presentence report (PSR), the Court designated Woods as a career offender and also applied an enhancement for maintaining a premises for the purpose of distributing cocaine.  The Court based Woods's career offender designation upon a 2000 South Carolina state court conviction for possession with intent to distribute under S.C. Code Ann. § 44-53-370 (PWID conviction) and for possession with intent to distribute in proximity of a school or park under § 44-53-445 (park PWID conviction); and a 2016 South Carolina state court conviction for distribution under § 44-53-370 (distribution conviction).

Although defense counsel argued for a variant sentence of forty-one to fifty-one months incarceration, based upon the PSR and the other information supplied before and at sentencing, the Court sentenced Woods to 151-months incarceration, the low end of the guideline range.  The Court also sentenced Woods to a three-year term of supervised release to follow.

Woods appealed, but the Fourth Circuit dismissed the action due to the appellate waiver in Woods's plea agreement.  His current projected release date is September 23, 2028.  While incarcerated, Woods has engaged in rehabilitative programs provided by the Bureau of Prisons (BOP), such as vocational training, GED classes, parenting classes, and money management courses.

Woods filed the motion to vacate.  The government filed a response, in which it also moved for summary judgment.  Woods replied.

During this time, Woods also filed two motions to reduce his sentence due to the COVID-19 pandemic, which the Court denied, along with a motion for reconsideration, which also asked for release to help care for his sick aunt.

He later filed the first of the motions to reduce his sentence currently before the Court. The government responded, and Woods replied. Finally, he filed two additional motions to reduce sentence. Because they merely reiterate arguments Woods has previously raised or that are easily disposed of by the Court, the Court declined to require a response to the second and third pending motions to reduce sentence.

The Court, having been fully briefed on the relevant issues, will now adjudicate the motions.

### III.   MOTION TO VACATE AND MOTION FOR SUMMARY JUDGMENT

#### A.   *Standard of Review*

A federal prisoner may move to "vacate, set aside or correct" his sentence if it

> was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate two elements: 1) "counsel's performance was deficient," and 2) "the deficient performance prejudiced the defense . . . [so] as to deprive the defendant of a fair trial." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

3

The first element analyzes whether trial counsel provided "reasonably effective assistance." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.*

The second element "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The defendant raising an ineffective assistance challenge has an affirmative obligation to prove prejudice. *Id.* at 693.

"[T]he two-part *Strickland v. Washington* test [also] applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence[,]" and the second prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 58–59. "In other words, in order to satisfy the 'prejudice' requirement [of the second prong], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

### B.     Discussion and Analysis

#### 1.     *Whether counsel was ineffective because he failed to object to the career offender guideline enhancement*

Woods maintains defense counsel was ineffective because he failed to object to the career offender enhancement. The government insists counsel's strategy of seeking a variance, given Woods's non-violent history, constituted effective assistance.

Under the guidelines, a defendant qualifies as a career offender if he was over eighteen when he committed the crime of conviction, which was a controlled substance felony offense, and

4

has at least two prior felony convictions of either a crime of violence or a controlled substance offense. *See* U.S.S.G. § 4B1.1(a) (defining "career offender").

The guidelines define a "controlled substance offense" as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

When determining whether a prior conviction triggers a career offender enhancement, federal courts apply one of two different approaches. Under the "categorical approach," a court "focuses on the *elements* of the prior offense rather than the *conduct* underlying the conviction." *United States v. Dozier*, 848 F.3d 180, 183 (4th Cir. 2017) (internal quotation marks omitted).

Where a state statute is divisible, however, a court applies the "modified categorical approach." *Mathis v. United States*, 579 U.S. 500, 505 (2016). A statute is divisible if it "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Id.* By contrast, a statute is indivisible if it merely "enumerates various factual means of committing a single element." *Id.* at 506.

Under the modified categorical approach, the Court may review "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.*

The statutes that gave rise to Woods's predicate convictions prohibit purchase of controlled substances, in addition to other activities such as distribution or possession with intent to distribute. *See* S.C. Code Ann. § 44-53-370(a)(1) (making it unlawful for a person to "manufacture, distribute, dispense, deliver, purchase, aid, abet, attempt, or conspire to manufacture, distribute, dispense,

5

deliver, or purchase, or possess with the intent to manufacture, distribute, dispense, deliver, or purchase a controlled substance or a controlled substance analogue[.]"); § 44-53-445(A) (making it "a separate criminal offense for a person to distribute sell, purchase, manufacture, or to unlawfully possess with intent to distribute" a controlled substance within a half-mile of a school or public park).

The Fourth Circuit has held that similar South Carolina drug statutes are divisible. *See, e.g.*, *United States v. Furlow*, 928 F.3d 311, 322 (4th Cir. 2019), *vacated on other grounds by Furlow v. United States*, 140 S. Ct. 2824 (2020) (holding that S.C. Code Ann. § 44-53-375—which is similar to § 44-53-370, but limited to offenses involving methamphetamine and cocaine base—is divisible).  Thus, because Sections 44-53-370 and 44-53-445 also "list elements in the alternative, and thereby define[s] multiple crimes[,]" *Mathis*, 579 U.S. at 505, the Court holds they are also divisible such that the modified categorical approach applies.

Therefore, the Court must review documents related to Woods's conviction to determine what crimes he was convicted of.

His PWID conviction indictment is captioned "possession with intent to distribute crack cocaine[,]" PWID Conviction Indictment, and his sentencing sheet lists the offense he pled guilty to as "PWID cocaine[,]" PWID Conviction Sentencing Sheet.  Even though the indictment lists all the alternative elements, the evidence shows his PWID conviction was a controlled substance offense under the guidelines, that is, possession with intent to distribute.  The same analysis applies to his park PWID conviction, which occurred at the same time.

Moreover, as to his distribution conviction, the indictment is entitled "DISTRIBUTION OF COCAINE[,]" and it fails to list "purchase" as one of the alternative elements.  Distribution

6

Conviction Indictment. And, in the transcript from his plea colloquy, Woods admits to having sold a quantity of cocaine.

It is therefore also a controlled substance offense under the guidelines, and Woods thus qualifies as a career offender. *See United States v. Boyd*, 55 F.4th 272, 278–79 (4th Cir. 2022) (failing to find clear error in the district court's determination that a sentencing sheet for a Section 44-53-370 offense that read "Drugs / Manuf., poss. of other sub. in Sch. I, II, III or flunitrazepam or analogue, w.i.t.d. – 1st in violation of § 44-53-0370(b)(2)" and was signed by the defendant, defense counsel, prosecutor, judge, clerk, and court reporter showed by a preponderance of the evidence the defendant's predicate conviction was for possession with intent to distribute, even though it contained a generalized description of the defense); *see also United States v. Davis*, No. 20-4433, 2023 WL 4375035 (4th Cir. July 7, 2023) (confirming that distribution of crack cocaine under Section 44-53-375 is a controlled substance offense, but failing to reach the issue as to Section 44-53-370 cocaine offenses).

Accordingly, not only would an objection to the career offender guideline have been frivolous, counsel's calculation that arguing for a variance had a greater likelihood of success was reasonable. *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004) (observing that the "reasonableness of a lawyer's trial performance must be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances").

Therefore, as to this ground, counsel provided effective assistance under the first prong of *Strickland*. Because Windham needs to satisfy both prongs, there is no reason to discuss the second, prejudice. *See Strickland*, 466 U.S. at 687 (holding the defendant must establish both prongs to show ineffective assistance of counsel).

The Court will thus deny Woods's motion to vacate and grant the government's motion for summary judgment as to this ground.

> 2. *Whether counsel was ineffective because he failed to object to the sentencing enhancement for maintaining a premises*

Woods also posits counsel was ineffective because he failed to object to the two-level enhancement for maintaining a premises for the purpose of distributing a controlled substance. The government counters that such an objection would have been frivolous.

Under Guideline 2D1.1, the Court should apply a two-level enhancement to the total offense level "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance[.]" U.S.S.G. § 2D1.1(b)(12). Note 17 to the guideline provides the Court should consider "(A) whether the defendant held a possessory interest in (*e.g.*, owned or rented) the premises [i.e., a building, room, or enclosure], and (B) the extent which the defendant controlled access to, or activities at, the premises." It instructs that

> [m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the Court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance, and how frequently the premises was used by the defendant for lawful purposes.

*Id.*

In this case, Woods exercised control over the residence as a long-term occupant, even if his mother owned it. The use of the residence for distributing a controlled substance was "more than incidental or collateral[,]" instead, it was a primary use of the residence. *United States v. Miller*, 698 F.3d 699, 706–07 (8th Cir. 2012) ("§ 2D1.1(b)(12) applies when a defendant uses the premises for the purpose of substantial drug-trafficking activities, even if the premises was also

8

her family home at the times in question."). Four of the twelve controlled purchases from Woods during the investigation occurred at Woods's residence.

The Court thus properly applied the enhancement, even if Woods used the residence for legal purposes as well. *See Untied States v. Sanchez*, 810 F.3d 494, 497 (7th Cir. 2016) (affirming application of the enhancement when the defendant's residence was not used exclusively as a "stash house"). Counsel's decision not to object to the enhancement, then, was reasonable.

Accordingly, Woods has failed to show counsel was ineffective on this ground as well. The Court will therefore deny Woods's motion to vacate and grant the government's motion for summary judgment.

**IV.    MOTIONS TO REDUCE SENTENCE**

    *A.    Standard of Review*

Upon a defendant's motion, the Court may reduce a term of imprisonment if the defendant has exhausted his administrative remedies and "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A)(i), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185-86 (4th Cir. 2021). First, the Court determines whether "extraordinary and compelling reasons" exist to support a sentence reduction. *Id.* at 185 (quoting § 3582(c)(1)(A)(i)).

Second, the Court considers whether "a [sentence] reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Because there is "as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), . . . district courts are empowered to

9

consider *any* extraordinary and compelling reason for release that a defendant might raise." *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (internal alterations and citations omitted).

Finally, even if the Court finds extraordinary and compelling reasons to support relief, it retains the discretion to deny a defendant's motion after balancing the applicable 18 U.S.C. § 3553(a) factors. *High*, 997 F.3d at 186.

### B.     *Discussion and Analysis*

As an initial matter, Woods has exhausted his administrative remedies as to the first pending motion to reduce sentence. *See* 18 U.S.C. § 3582(c)(1)(A) (explaining a Defendant may bring a motion for compassionate release only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier").

In his second motion to reduce sentence, he states he has attached documentation of exhaustion of his remedies. The Court, however, failed to receive such documentation. And, Woods's third motion makes no mention of administrative remedies.

Because the administrative exhaustion requirement is not jurisdictional, because the second motion repeats arguments Woods has previously raised, and because the Court determines those arguments lack merit, the Court need not wait to receive such documentation. *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021) (holding the requirement to exhaust administrative remedies is a claims-processing rule, meaning that the Court must dismiss the motion if the issue is properly raised by the government).

The Court thus turns to the merits of his motions to reduce his sentence, which it will consider together.

10

> *1.     Whether Woods presents extraordinary and compelling reasons warranting a reduction of his sentence under 18 U.S.C. § 3582(c)*

Woods insists extraordinary and compelling reasons for a reduction in his sentence exist because the Court erred in classifying him as a career offender and applying the enhancement for maintaining a premises for the distribution of controlled substances, as well as due his health risks and prison conditions caused by the COVID-19 pandemic, and his rehabilitation. The government counters that Woods's complaints about perceived sentencing errors are improperly raised in a motion for compassionate release.

Woods raises the same issues in his motions to reduce sentence as in his motion to vacate, although he fails to explicitly style them as claims of ineffective assistance of counsel here. For the reasons explained above, those arguments fail. Moreover, a motion under 18 U.S.C. § 3582 is the improper avenue for such arguments. *See United States v. Ferguson*, 55 F.4th 262, 270 (4th Cir. 2022) (reasoning a defendant could not use compassionate release to sidestep habeas requirements).

Further, COVID-19 and its attendant risks also fail to constitute extraordinary and compelling reasons. As stated in the Court's previous orders denying compassionate release, the BOP has effectively mitigated the COVID-19 risk in Woods's facility, even considering Woods's personal risk factors. Although Woods raises his post-traumatic stress disorder and anxiety for the first time as health conditions increasing his risk in the instant motions, the Court determines these ailments fail to disturb its previous analysis.

Moreover, Woods states he has now received the vaccine, further reducing his risk. *See United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release.").

Additionally, as stated above, Woods raised his aunt's health as a reason for his release in his motion for reconsideration. As before, although the Court recognizes the expense and difficulty in finding care for sick family members, this also fails to present extraordinary and compelling reasons.

Also, although Woods has completed several rehabilitative programs, which the Court commends him for, such strides fail to warrant a sentence reduction. *See also* 28 U.S.C. § 994(t) (instructing commission that in "promulgating general policy statements regarding" compassionate release, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason"). The Court nevertheless encourages Woods to continue to take part in programming the BOP has to offer.

Finally, Woods argues in his final motion to reduce sentence that the Court should grant his motions because of the government's delay in responding. After the Court granted several extensions to the government, it responded less than two months after Woods filed his first motion to reduce sentence. As stated above, Woods replied. Thus, the Court determines there was no great delay by the government. And, even if there was any delay, as explained, Woods's arguments in support of his motion lack merit.

The Court thus determines Woods has failed to present extraordinary and compelling reasons for his release.

### 2. *Whether the Section 3553(a) factors weigh in favor of release*

Even if the Court determined extraordinary and compelling circumstances exist in this case, however, analysis of the Section 3553(a) factors would preclude release. *See* 18 U.S.C. § 3582(c)(1)(A) (the Court may grant compassionate release only "after considering the factors set forth in section 3553(a) to the extent that they are applicable[.]"). These factors include

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) "the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes by the defendant;
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for [the offense] . . . [;]
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . [;]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Woods pled guilty to possession with intent to distribute cocaine, a serious offense. Moreover, Woods has a criminal history category of six, the highest level. As the Court noted at sentencing, he has a lengthy criminal history, including drug trafficking and resisting arrest. Although the Court commends Woods for his rehabilitative activities while incarcerated, they fail to change the Court's analysis. His BOP Recidivism Risk Assessment rates him at a medium risk of reoffending.

Considering the balance of the factors, the Court determines a reduced sentence is inappropriate. The 151-month sentence is sufficient, but no longer than necessary, to promote respect for the law, provide adequate deterrence, reflect the seriousness of his offense, and is a just punishment in this case.

## V.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Woods's motion to vacate, ECF No. 91, is **DENIED**; the government's motion for summary judgment, ECF No. 100, is **GRANTED**; and Woods's motions to reduce sentence, ECF Nos. 125, 139, and 140, are **DENIED**.  Woods's motion to vacate is **DISMISSED WITH PREJUDICE**.

To the extent Woods requests a certificate of appealability from this Court, that certificate is **DENIED**.

**IT IS SO ORDERED**.

Signed this 10th day of July 2023, in Columbia, South Carolina.

> s/ Mary Geiger Lewis
> MARY GEIGER LEWIS
> UNITED STATES DISTRICT JUDGE

*****
### NOTICE OF RIGHT TO APPEAL

Woods is hereby notified of the right to appeal the Court's ruling on his motion to vacate and the government's motion for summary judgment within sixty days from the date hereof and the Court's ruling on his motions to reduce sentence within fourteen days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.